JOHN FREDERICK SHEDRICK AND MAURICE RANDOLPH BECKWITH *v.* STATE OF MARYLAND

[No. 24, September Term, 1970.]

*Decided December 29, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, THOMPSON, MOYLAN, and POWERS, JJ.

*John T. Bell* for appellant Shedrick, and *Victor L. Crawford* for appellant Beckwith.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *William A. Linthicum, Jr., State's Attorney for Montgomery County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

As a result of an altercation between appellants, John Frank Shedrick and Maurice Randolph Beckwith, each appellant was separately indicted under a three-count indictment charging assault with intent to murder (1st count), assault and battery (2nd count), and disorderly conduct (3rd count). The first two counts of Indictment No. 10,133 charged Shedrick with assault with intent to murder, and assault and battery upon Beckwith; while the first two counts of Indictment No. 10,114 charged Beckwith with assault with intent to murder, and assault and battery upon Shedrick.

The cases were consolidated for trial and a joint trial was held in the Circuit Court for Montgomery County with a jury. At the close of all the evidence the trial court granted a motion for judgment of acquittal as to the first count of each indictment, and the jury found each appellant guilty of assault and battery under the second count. Each appellant was sentenced to the Montgomery County Detention Center for a period of one (1) year.

Detective Sergeant Hardesty of the Montgomery County Police testified that he responded to a call to the emergency room of Suburban Hospital at 7:30 p.m. on the evening of February 22, 1969, with reference to two subjects who had just been admitted. On arrival he saw both appellants lying on litters, undergoing treatment. After Shedrick had been treated, at approximately 8:30 p.m., Hardesty proceeded to take a statement [1] from this appellant.

Although appellants raise several different questions in their separate appeals, we find it necessary, for purposes of disposition, to discuss only whether the statement was properly admissible against (1) Shedrick or (2) Beckwith.

## I — APPELLANT SHEDRICK

When appellant Shedrick made his statement in the hospital, the detectives did not fully advise him of his constitutional rights as required by *Miranda v. Arizona,* 384 U. S. 436. This fact is indicated in the record [2] and

---

1. Detective Hardesty testified as to the substance of the statement: "He [Shedrick] stated on that evening he was at Minnie Martin's in his vehicle on along with Melvin Martin, William Martin, and Daniel Martin. At that time Mr. Beckwith drove up in his vehicle. He stated to him that he wanted to talk to him. Mr. Beckwith he pulled his vehicle in front of Mr. Shedrick's car. Mr. Shedrick got out of his vehicle, walked up and got inside of Mr. Beckwith's. At this time Mr. Beckwith got out of his side and went around to the side that Mr. Shedrick was on. Mr. Shedrick got out of the car at that time. He stated that Beckwith told him that he did not want him around anymore and he [Beckwith] pulled his gun from his [Beckwith's] belt . . . . and started hitting him [Shedrick] on the head with the gun. He stated at that time—I [Shedrick] tried to talk to him . . . . and during the fight he [Shedrick] was able to get back to his car, where he removed his pocket knife. He stated that he [Shedrick] cut, stabbed at him [Beckwith]."

2. (Record excerpts of cross-examination of D/Sgt. Hardesty by Attorney John T. Bell)

"Q But you said you did review with him the DB Form #50? I mean, did you go down the various advises with him, or you didn't do that, or—

"A Not all of them. That is one DB. I advised him that he had a right to remain silent, that if it so developed, anything that he said could be used as evidence against

the State concedes it.[3] The State argues, however, that *Miranda* is not applicable here for three reasons. First, the State alleges that the appellant was neither "in custody" nor was he "otherwise deprived of his freedom of action in any significant way" as required by the language of *Miranda*. Secondly, the State contends that Shedrick's oral statement was made voluntarily without inducements rather than in response to questioning as is also required by *Miranda*. Thirdly, the State argues in the alternative, that the trial court was correct in admitting the statement under the theory that it was part of the *res gestae*. We disagree.

The *Miranda* decision held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U. S. at 444. See also *Myers v. State*, 3 Md. App. 536.

According to *Miranda*, a statement is inadmissible, without proper warnings, as a product of custodial interrogation if it is made in response to "questioning initiated by law enforcement officials" while the accused is "deprived of his freedom in any significant way." 384

him in Court, and, also, the right to the presence of an attorney.

"Q Which admonishment didn't you give him, the right to have an attorney present during the time of investigation, or during the time of interrogation?

"A He had a right to the presence of an attorney prior to and during any questioning. If you cannot afford one, one will be appointed for you. If you desire anytime during questioning you may remain silent and ask for an attorney, and I don't think he was advised that do you understand what we have said?

"Q Is that the only one that you didn't advise him of? Did you advise him that he had a right to have an attorney with him while you were interrogating him?

"A No, I did not."

3. Assistant State's Attorney William Cave argued:

"If the Court please, I would stand by my original statement, and urge upon the Court that it is not a *Miranda* situation . . . . The detective did more than what was required. He gave him some cautionary instructions, not complying with the full *Miranda*."

U. S. at 444. We find both of these requisite circumstances to be present in the instant case. The specific reach of the term "custodial interrogation" was explored in *Gaudio v. State*, 1 Md. App. 455. We found the term to be applicable to a number of situations, among them,

    (1)  the holding of a defendant incommunicado in an isolated setting;
    (2)  surrounding him with antagonistic forces;
    (3)  subjecting him to techniques of persuasion. 1 Md. App. at 468.

These situations effectively deprive a defendant of his "freedom of action" even if they are only apparent to the person questioned or making a statement. We noted in *Myers v. State, supra,* that:

> "* * * '[T]he custody requirement of *Miranda* does not depend on the subjective intent of the law enforcement officer-interrogator but upon whether the suspect is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.' * * *."
> 3 Md. App. at 537.

The record reveals that appellant Shedrick made his statement in the presence of two detectives in a small separate room immediately adjacent to the emergency room. At the time of his statement Shedrick was aware of the seriousness of Beckwith's condition, including the fact that the latter was unconscious, was being fed intravenously and might possibly die. The gravity of the situation was accentuated by the partial and imperfect *Miranda* warnings given by Detective Hardesty. Under these circumstances we find that Shedrick was effectively deprived of his freedom of action and a "custodial interrogation" situation existed.

A voluntary utterance is one made without any prod-

ding or inducement of any kind by the officer to whom it is made. *Blevins v. State,* 8 Md. App. 708, 711. If a statement is voluntary, it will not be considered made in response to questioning initiated by the State and, therefore, it is not within the protective scope of *Miranda.* But Detective Hardesty's testimony that Shedrick "wanted to talk" does not make the latter's statement voluntary under the circumstances.

The detectives and Shedrick were equally aware of the apparently grave condition of Beckwith, the causal linkage of that condition to Shedrick, and the legal consequences stemming from this implication. This is indicated by the exculpatory nature (as to who was the aggressor) of Shedrick's statement. Under such circumstances we cannot say that the statement was freely or voluntarily given. We find that appellant's statement was made in response to questioning initiated during a custodial interrogation. Since the proper *Miranda* warnings were not given, the statement should have been held inadmissible at trial.

The trial court admitted the statement under the theory that it was covered by the *res gestae* exception to the hearsay rule. We find that since the interrogation was a custodial interrogation it could not be admissible under the *res gestae* rule.

Appellant Shedrick's statement was a product of custodial interrogation and the proper *Miranda* warnings should have been given.

## II — APPELLANT BECKWITH

Appellant Beckwith argues that Shedrick's statement was inadmissible in his case. The trial court held that the statement was admissible against Beckwith under the principles of *res gestae.* We disagree, since we have found for reasons stated above, that the statement as uttered by appellant Shedrick was not admissible as a *res gestae* statement.

In the alternative, the State argues that Shedrick's statement might still be used in Beckwith's case in the

"manner of a volunteered statement, since such a state-
ment does not violate the rules set forth in *Bruton v.
United States*, 391 U. S. 123, as it was not the statement
of one codefendant used against another or at the most
was harmless error." Bruton held that the admission of
a codefendant's confession (whether or not admissible
against the declarant) which implicated a defendant at a
joint trial constituted prejudicial error since it violated
petitioner's right of cross-examination secured by the con-
frontation clause of the Sixth Amendment. The court rea-
soned that there was a "substantial risk that the jury,
despite instructions to the contrary, looked to the incrim-
inating extrajudicial statements in determining petition-
er's guilt." 391 U. S. at 126. Whether or not Shedrick's
statement may be considered a "confession" or a "de-
fense" in terms of his participation in the altercation, it
clearly implicates Beckwith as the instigator of the as-
sault, and in this incriminating context it is within the
exclusionary scope of *Bruton*.

Citing our holding in *Sutton v. State*, 8 Md. App. 285,
297, the State argues that even if the admission of Shed-
rick's statement against Beckwith was a *Bruton* error, it
is still admissible since such an error is properly consid-
ered harmless where the other evidence is overwhelming.
We had no difficulty in *Sutton* in concluding beyond a
reasonable doubt that the statement of one defendant did
not contribute to the conviction of the others (8 Md. App.
at 298) because in that case there was independent real
evidence supporting the convictions. But in the instant
case, as in *Bruton*, we find no independent evidence suffi-
cient to support the conviction of Beckwith without the
admission of Shedrick's statement. Here, as in *Bruton*,
Shedrick did not testify and thus Beckwith was denied
his constitutional right of confrontation.

We find therefore that Shedrick's statement as against
Beckwith's interests is neither admissible under a *res
gestae* theory, as the trial court concluded, nor as an ex-
ception to the *Bruton* holding as "harmless error", as
urged by the State. Since Shedrick's statement was inad-

missible against Shedrick and also inadmissible against Beckwith, we must reverse each conviction.

> *In Indictment No. 10,133, judgment reversed as to Shedrick, and case remanded for a new trial.*
> *In Indictment No. 10,114, judgment reversed as to Beckwith, and case remanded for a new trial.*