STATE of Wisconsin, Plaintiff-Respondent,

v.

Jay J. ESSER, Defendant-Appellant.†

Court of Appeals

*No. 91-1437-CR. Submitted on briefs November 18, 1991.—Decided January 15, 1992.*

(Also reported in 480 N.W.2d 541.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Chandek* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *David J. Becker,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J.   Following his no contest plea, Jay J. Esser was convicted of homicide by intoxicated use of a motor vehicle pursuant to sec. 940.09(1)(a), Stats. The issue on appeal is whether the trial court erred in refusing to suppress a series of statements given by Esser following a motor vehicle accident in which Esser was the driver.[1] We affirm the trial court's rulings denying Esser's request to suppress his statements. We will recite the undisputed and relevant facts as we address each set of Esser's statements.

---

[1] Esser's appeal is taken pursuant to sec. 971.31(10), Stats., which permits an appeal from the denial of a suppression order despite the defendant's plea of guilty or no contest.

### 1. Statements at the Scene of the Accident

During the early morning hours of December 31, 1988, following a party in Wind Lake, Wisconsin, Esser was driving back to his residence in the city of New Berlin. Esser's friend, Mark Thomas, was a passenger. A second vehicle, occupied by others who were also at the party, was following the Esser vehicle. As Esser rounded a corner on College Avenue in the city of Muskego, his car slid, went off the roadway and hit a telephone pole. Thomas, the passenger, was killed in the accident. Esser was injured.

City of Muskego police officer Todd Nelson responded to the accident scene. He asked Kathy Shanahan, the driver of the second vehicle, which person was driving the Esser vehicle. Shanahan responded that Esser was driving. Officer Nelson then asked Esser if he was driving. Esser responded, "I think so." Officer Nelson had no further conversation with Esser at the scene of the accident.[2]

■■

Esser contends that this statement was taken in violation of *Miranda*[3] and should have been suppressed. *Miranda,* however, first requires custody. "The court in *Miranda* dealt with principles of protection of the 'privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of

---

[2]At the scene of the accident, another police officer, John Walejewski, also spoke to Kathy Shanahan about who was driving the Esser vehicle. Shanahan again reported that Esser was driving. Esser intervened in this conversation to state that he was not driving the vehicle. These statements are not at issue on appeal.

[3]*Miranda v. Arizona,* 384 U.S. 436 (1966).

action in any significant way.' " *State v. Clappes,* 117 Wis. 2d 277, 284, 344 N.W.2d 141, 145 (1984) (quoting *Miranda v. Arizona,* 384 U.S. 436, 477 (1966)).

In *Clappes,* the defendant was taken to a hospital emergency room for treatment following an automobile accident. While in the emergency room receiving treatment, the defendant was questioned without prior *Miranda* warnings. Despite the defendant's medical condition, the supreme court observed that:

> Clappes was not questioned in a coercive atmosphere of isolation created by the police giving rise to overbearing compulsion. The circumstances were public with witnesses present and no apparent police trickery or deception was used. The questions asked related to police investigation of a double fatal accident identifying the parties and circumstances, not a custodial verbal search intending to lead to the defendant's self incrimination. Police station interrogation carries a strong presumption of custody, although even that can be voluntary on the defendant's part; however, that strong custodial presumption does not exist in a public place, with others present as witnesses, without an arrest having been made.

*Id.* at 287, 344 N.W.2d at 146–47 (citation omitted).

We conclude that this case is controlled by *Clappes.* While Esser's injuries certainly limited his mobility and caused him distress, these conditions were not the result of any police conduct. Nor was Esser under arrest or in isolation; the questioning occurred in a public setting with other witnesses and friends present; and no police trickery or deception was used. Officer Nelson simply asked one of the more obvious and expected questions upon arriving at the scene of an accident—"who was driving?" The *Miranda* Court stated, "General on-the-

901

scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." *Miranda*, 384 U.S. at 477–78.

Officer Nelson's questioning of Esser was not custodial interrogation. The trial court correctly denied this aspect of Esser's motion to suppress.

### 2. Statements at the Hospital

#### a. Evidentiary Fact Finding

Later, at the scene of the accident, as Esser was being placed into an ambulance, Officer Nelson arrested Esser for operating a motor vehicle while intoxicated. The officer then traveled to the hospital to question Esser. Upon arriving at the hospital, Officer Nelson found Esser in the emergency room receiving treatment. Describing his delivery of the *Miranda* rights to Esser at this time, Officer Nelson testified, "I immediately read to him from a police department Miranda card his constitutional rights." The officer did not further specify as to what rights were actually read to Esser. Nor did the state introduce into evidence the *Miranda* card used by Officer Nelson.

Esser contends that this evidence is insufficient to constitute compliance with *Miranda.* The trial court expressed its concern that the evidentiary record did not reflect "a specification as to what those rights are." However, the court concluded, nonetheless, that the state had established beyond a reasonable doubt that Officer Nelson properly advised Esser of the requisite *Miranda* warnings.

We first address the trial court's factual determination that Officer Nelson properly advised Esser of his

*Miranda* rights. A trial court's findings of evidentiary or historical facts will not be overturned unless they are clearly erroneous. Section 805.17(2), Stats. *State ex rel. McMillian v. Dickey,* 132 Wis. 2d 266, 280, 392 N.W.2d 453, 458 (Ct. App. 1986).

In *Phelps v. Duckworth,* 757 F.2d 811 (7th Cir.), *cert. denied,* 474 U.S. 1011 (1985), the federal district court found that a suspect had been properly advised under *Miranda* where the testimony revealed only that the defendant was "read his . . . rights." *Id.* at 814. The court concluded that to hold otherwise "would contradict reason and common sense." *Id.* at 816.[4]

■

We find *Phelps* persuasive. *Miranda* is a legal doctrine known even to many lay persons. The phrase "*Miranda* rights" conjures up the well-known litany of rights which many citizens could recite verbatim. From these facts, we conclude the trial court was permitted to draw the inference that Officer Nelson fully and properly advised Esser of the *Miranda* rights.

■

A permissive inference allows, but does not require, the trier of fact to infer the elemental fact from proof by

---

[4]Interestingly, in *Phelps v. Duckworth,* 757 F.2d 811 (7th Cir.), *cert. denied,* 474 U.S. 1011 (1985), the roles were reversed. The defendant claimed that the police had *properly* advised him of his *Miranda* rights and that the prosecutor then had improperly commented on his silence. The state, on the other hand, argued that the officer's abbreviated testimony concerning the delivery of the *Miranda* rights did not satisfy *Miranda.* We have considered whether this role reversal makes *Phelps* inapplicable. We conclude it does not. Improper prosecutorial comment on a defendant's silence requires a showing of compliance with *Miranda.* The same is true in the more conventional case which is before us. Thus, we find *Phelps* persuasive.

the prosecutor of the basic one. *Mueller v. State,* 94 Wis. 2d 450, 475, 289 N.W.2d 570, 582 (1980). Such an inference is valid where there is a rational connection between the proven facts and the inferred facts. *State v. Nixa,* 121 Wis. 2d 160, 166, 360 N.W.2d 52, 56 (Ct. App. 1984). Here, such a rational connection exists between Officer Nelson's testimony and the trial court's inference drawn therefrom. We agree with *Phelps* that it would be unreasonable and contrary to common sense to conclude that a police officer means something other than the well-understood *Miranda* litany when testifying that a suspect was advised of the *Miranda* rights from a police department *Miranda* card. The trial court's finding is not clearly erroneous.

### b. Constitutional Fact

■

Although the trial court's factual determination survives the clearly erroneous test, we must further consider whether Officer Nelson's abbreviated testimony satisfies the constitutional requirements of *Miranda* under the applicable burden of proof. The application of constitutional principles to the facts of a case is subject to independent appellate review. *McMillian,* 132 Wis. 2d at 280, 392 N.W.2d at 458.

We first address the parties' dispute as to the applicable burden of proof in a *Miranda* hearing. Esser contends that the standard is the "beyond a reasonable doubt" standard which has been recited in numerous Wisconsin appellate cases over the years since *Miranda. See, e.g., Micale v. State,* 76 Wis. 2d 370, 371, 251 N.W.2d 458, 459 (1977). Although acknowledging this authority, the state counters that the proper burden of proof is the "preponderance of the evidence" standard

pursuant to *Colorado v. Connelly,* 479 U.S. 157, 168 (1986). We agree with the state.

In *Connelly,* the United States Supreme Court reversed the Colorado Supreme Court's determination that the applicable burden of proof under *Miranda* was the "clear and convincing" standard. *Connelly,* 479 U.S. at 167-68. Relying on its earlier decision in *Lego v. Twomey,* 404 U.S. 477 (1972), the Supreme Court stated: "Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our Miranda doctrine, the State need prove waiver only by a preponderance of the evidence." *Connelly,* 479 U.S. at 168.

*Lego* does retain authority unto the states to adopt a higher standard *pursuant to their own law. Lego,* 404 U.S. at 489. However, no Wisconsin case which speaks of the "beyond a reasonable doubt" *Miranda* standard has ever adopted such standard under Wisconsin state law. Whether such a burden should be adopted is properly left to our supreme court in the appropriate case. Here, Esser makes no claim under color of state law. Therefore, *Connelly* is the governing law.[5]

The burden of proof rejected in *Connelly* was the "clear and convincing evidence" standard. This is the equivalent of Wisconsin's "middle" burden of proof—the "clear, satisfactory and convincing" standard. *See* Wis J I—Civil 205. The burden of proof adopted in *Lego* and reconfirmed in *Connelly* was the "preponderance of the evidence" standard. This is the equivalent of Wiscon-

---

[5]Usually we would certify a question of this magnitude to the Wisconsin Supreme Court for its determination. However, where the issue is so obviously governed by a controlling decision of the United States Supreme Court, we conclude that this court may appropriately address the matter.

sin's "ordinary" burden of proof—the "greater weight of the credible evidence" standard. *See* Wis J I—Civil 200. We adopt this standard as the burden of proof in *Miranda* cases.

■

We have already held that the trial court's finding that Officer Nelson properly advised Esser of his *Miranda* rights is not clearly erroneous. In *Phelps,* in the face of a similarly abbreviated testimonial rendition of *Miranda,* and when the question before the court was of constitutional dimension, the Seventh Circuit Court of Appeals determined that the requisite burden of proof had been satisfied. *See Phelps,* 757 F.2d at 816. We are therefore satisfied to a reasonable certainty by the greater weight of the credible evidence that Officer Nelson properly and fully advised Esser of his *Miranda* rights.[6]

### 3. Voluntariness

Esser also challenges the voluntariness of his statements. However, he never pursued this issue in the trial court. In the midst of the suppression hearing, the trial court inquired of Esser's trial counsel whether the motion to suppress raised both *Miranda* and voluntariness issues. While counsel responded that he intended to raise a voluntariness issue, his motion did not expressly do so. Counsel then stated that he would prepare a further written motion expressly raising the voluntariness

---

[6]Because we have concluded that the state met its burden in establishing compliance with *Miranda,* we need not address the state's harmless error doctrine nor Esser's rejoinder that harmless error does not apply to an appeal such as this taken pursuant to sec. 971.31(10), Stats. *See State v. Monahan,* 76 Wis. 2d 387, 401, 251 N.W.2d 421, 426 (1977).

issue. Thus, the suppression hearing proceeded on the *Miranda* issue only.

On appeal, however, Esser raises a voluntariness issue. In its respondent's brief, the state contends that Esser has waived this issue. Esser does not address this claim in his reply brief. Our independent review of the record confirms the state's argument that Esser never pursued the voluntariness issue in the trial court. The issue is waived. *See State v. Woods,* 144 Wis. 2d 710, 716, 424 N.W.2d 730, 732 (Ct. App. 1988).

We affirm the trial court's rulings admitting Esser's statements.

*By the Court.*—Judgment affirmed.