STATE of Wisconsin, Plaintiff-Respondent,

v.

Rodney LASS, Defendant-Appellant,

Eric Scott PITRE, Defendant.

STATE of Wisconsin, Plaintiff-Respondent,

v.

Rodney LASS, Defendant-Appellant.

Court of Appeals

*Nos. 94–1335–CR, 94–2129–CR. Submitted on briefs April 4, 1995.—Decided May 9, 1995.*

(Also reported in 535 N.W.2d 904.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael F. Hart* and *Martin E. Kohler* of *Kohler & Hart* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney

general, and *David J. Becker*, assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. Rodney Lass appeals from a judgment, entered on jury verdicts, convicting him, as an habitual offender, *see* § 939.62, STATS., of possession of cocaine with intent to deliver, as party to a crime, *see* §§ 161.16(2)(b)1, 161.41(1m)(c)4, 939.05, STATS.; possession of marijuana with intent to deliver, as party to a crime, *see* §§ 161.14(4)(t), 161.41(1m)(h)2, 939.05, STATS.; and two counts of failure to pay the tax levied on controlled substances, *see* §§ 139.87–139.96, STATS.; and from the trial court's order denying his motion for post-conviction relief. He raises four issues. First, he claims that the trial court erred in not ordering the disclosure of a confidential informer's identity. Second, Lass claims that the State violated his right to counsel when it recorded conversations that he had with a fellow inmate in jail. Third, Lass contends that the State did not disclose timely what he claims is "exculpatory evidence." Finally, Lass argues that the State violated his rights by failing to give him timely access to three-hundred pages of material concerning Lass's wealth. We affirm.

Lass's convictions arise out of drugs and drug paraphernalia that were found after police searched, pursuant to a search warrant, an apartment occupied by Shannon Piotrowski. Piotrowski told the police that the drugs and paraphernalia belonged to her cousin Eric Pitre and his friend, Lass. The search warrant was based on a statement to the police by a confidential informer that he saw "Jane Doe" Shannon in possession of a white powder that the informer believed to be

cocaine, both because the informer had previously used and sold cocaine and because "Jane Doe" Shannon said that it was cocaine. We discuss Lass's claims in turn.

### 1. *The confidential informer.*

RULE 905.10(1), STATS., provides that the State has "a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer." Under the rule, if the trial court determines that there is a "reasonable probability" that the informer can give testimony that is "necessary to a fair determination" of the defendant's guilt or innocence, the State must disclose the informer's identity; if the State refuses to disclose the informer's identity, the trial court must grant the defendant's motion to "dismiss the charges to which the testimony would relate." RULE 905.10(3)(b), STATS. This procedure is consistent with the constitutional principle articulated by *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957): "Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." In Wisconsin, the privilege gives way if the informer's testimony is "necessary to *support* the theory of the defense." *State v. Outlaw*, 108 Wis. 2d 112, 141, 321 N.W.2d 145, 160 (1982) (Callow, J., concurring, on behalf of four members of the court) (emphasis in original).[1]

---

[1] Justice Callow's opinion is thus the opinion of the court. *State v. Dowe*, 120 Wis. 2d 192, 194–195, 352 N.W.2d 660, 662 (1984) (*per curiam*).

The trial court made three rulings in connection with Lass's request to disclose the identity of the informer. First, after holding a pre-trial hearing, *in camera*, at which it personally interrogated the informer without anyone other than the informer and the court reporter present, the trial court determined that there was nothing in the informer's testimony "that would either be materially inconsistent with Ms. Piotrowski's version or would otherwise be exculpatory." Second, after all the evidence was in, the trial court reconsidered and reaffirmed its earlier decision. Additionally, the post-conviction trial court declined to unseal the transcript of the *in camera* hearing.

Lass's theory underlying his request to have the State disclose the informer's identity is based on his contention that the informer would have testified that the drugs belonged to Piotrowski and not to Lass. This court has reviewed the transcript of the *in camera* hearing. The trial court was not only correct that the informer's testimony did not support Lass's theory, but, indeed, as the trial court pointed out in open court, the confidential informer's testimony at the *in camera* hearing would have been helpful to the State. This does not end the matter, however.

In an affidavit submitted to the post-conviction trial court in support of Lass's motion to unseal the transcript of the *in camera* hearing, one of Lass's lawyers avers, on "information and belief," that the confidential informer was "Angelo DeLeon," that DeLeon's "former counsel" would so testify, and that DeLeon is "now deceased." Lass thus argues that the privilege no longer applies. Furthermore, the affidavit represents that DeLeon's former lawyer would "testify that his client informed him that he [Angelo DeLeon] was not the individual who [*sic*] law enforcement

officers brought before the Court for the *in camera* inspection." (Bracketed material other than the "[ *sic*]" in the original.)

As pertinent to this appeal, RULE 905.10(3)(a), STATS., provides that the informer's privilege ceases to exist only if the informer's identity "has been disclosed to those who would have cause to resent" the informer's "communication" to law enforcement, and the disclosure is either by the holder of the privilege or "by the informer's own action." RULE 905.10(3)(a), STATS.[2] Rules of evidence should be enforced according to their plain language and should not be altered "merely because litigants might prefer different rules in a particular class of cases." *United States v. Salerno*, 505 U.S. 322, 112 S. Ct. 2503, 2507 (1992).[3] The waiver provisions of RULE 905.10(3)(a) thus do not apply here. First, the State is the holder of the privilege, RULE 905.10(1), STATS., and it did not reveal the informer's identity. Second, disclosure by the confidential informer's attorney, if in fact there was such disclosure, without specific authorization by the informer, is not "by the informer's own action." Additionally, although *Roviaro*, 353 U.S. at 60 n.8, indicates, in *dictum*, that

---

[2] There is also no privilege if the informer "appears as a witness" for the government. RULE 905.10(3)(a), STATS.

[3] Thus, *United States v. Herrero*, 893 F.2d 1512 (7th Cir. 1990), *cert. denied*, 496 U.S. 927, held that the government's disclosure of a confidential informer's identity to the defendant's attorney during a mid-trial sidebar conference did not waive the privilege because disclosure was not made "to one 'who would have cause to resent [the informant's] conduct,' " which is also a prerequisite to a waiver of the privilege under federal common law. *Id.*, 893 F.2d at 1526 (quoting *Roviaro*, 353 U.S. at 60 n.8; brackets by *Herrero*).

under federal common law the confidential informer privilege may die with the informer, RULE 905.10 does not so provide. Indeed, as the post-conviction trial court pointed out, disclosure of the identity of a confidential informer after the informer's death could put his or her family in the type of jeopardy that the informer's privilege was designed to prevent.

■

Although directing the State to disclose the informer's identity would be appropriate if Lass could establish that the person interrogated by the trial court during the *in camera* hearing was not the person who provided probable cause for the issuance of the search warrant, the sole support for this contention is the averment in the affidavit submitted to the post-conviction trial court by Lass's attorney that DeLeon's former lawyer would so testify. The State, on the other hand, submitted an affidavit executed by "one of the two chief investigating detectives" assigned to Lass's case in which the officer swore under oath that the person "whose information lead [*sic*] directly to the search warrant [for Piotrowski's apartment] is the same individual whom I brought to [the trial court's] chambers to testify, on the record, at an in-camera hearing." (Emphasis in original.) DeLeon's former attorney neither testified at the post-conviction hearing nor submitted an affidavit. The recitation in the affidavit submitted to the trial court by Lass's attorney representing what DeLeon's lawyer either said or would testify to was thus hearsay, as would be any testimony by DeLeon's lawyer as to what DeLeon allegedly told him. *See* RULE 908.01(3), STATS.[4] The trial court properly rejected Lass's offer of proof. *See State v. Bruckner*,

---

[4] RULE 908.01(3), STATS., provides:

151 Wis. 2d 833, 864 n.15, 447 N.W.2d 376, 389-390 n.15 (Ct. App. 1989) (hearsay recitation in affidavit insufficient to trigger hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether law enforcement personnel seeking search warrant either knowingly or recklessly made false statements in application for warrant).

### 2. *Right to counsel.*

After Lass's arrest, a lawyer representing one of Lass's fellow inmates in the Milwaukee County jail told the State that Lass had proposed to the inmate that he help Lass murder a potential witness in Lass's case. Law enforcement officers then monitored a conversation between the inmate and Lass. Lass claims that this violated his Sixth Amendment right to counsel and warrants dismissal, even though, as he admits, the monitored conversation was not used at trial.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right applies to criminal proceedings in state courts as well. *Gideon v. Wainwright*, 372 U.S. 335, 342–345 (1963). Once this right to counsel attaches, the State may not use against a defendant incriminating statements the defendant has made to a person acting as an agent of the state unless the defendant's lawyer is present. *Massiah v. United States*, 377 U.S. 201, 206 (1964); *Maine v. Moulton*, 474 U.S. 159, 176 (1985).

HEARSAY. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

The Sixth Amendment right to counsel is "offense-specific"; "[i]t cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (citations and internal quotation marks omitted). Thus, although *Moulton* held that the prosecution may not use against the defendant in a pending criminal case uncounselled incriminatory statements, it recognized that the government has a legitimate need to investigate "new or additional crimes" that either may have been or may be committed by the defendant, and that this does not violate the defendant's right to counsel that had attached in connection with a crime other than those being investigated. *Id.*, 474 U.S. at 179-180. Here, unlike the situation in *Moulton*, where the government used statements made in connection with the prosecution of crimes as to which Moulton's right to counsel had attached, the State did not use against Lass *any* of the statements he made to the inmate. Nevertheless, Lass argues on appeal that his convictions should be overturned to deter what he foresees as future violations by the State of a defendant's right to counsel. He draws upon *dictum* in *United States v. Morrison*, 449 U.S. 361 (1981), as support.

The court of appeals in *Morrison* directed the dismissal of an indictment charging Hazel Morrison with drug-law violations because government agents had violated her right to counsel by discussing the case with her without the knowledge or permission of her lawyer. *Id.*, 449 U.S. at 362–363. The Supreme Court

601

reversed, holding that the violation did not prejudice Morrison and that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Id.*, 449 U.S. at 365. *Morrison* opined in a footnote that the court of appeals' order that the indictment be dismissed was contrary to common sense:

> The Court of Appeals seemed to reason that because there was no injury claimed and because other remedies would not be fruitful, dismissal of the indictment was appropriate. But as the dissent below indicated, it is odd to reserve the most drastic remedy for those situations where there has been no discernable injury or other impact.
>
> The Court of Appeals also thought dismissal was appropriate to deter deliberate infringements of the right to counsel. But this proves too much, for it would warrant dismissal, not just in this case, but in any case where there has been a knowing violation. Furthermore, we note that the record before us does not reveal *a pattern of recurring violations by investigative officers that might warrant the imposition of a more extreme remedy in order to deter further lawlessness.*

*Id.*, 449 U.S. at 365 n.2 (emphasis supplied). Lass seizes upon the italicized words in support of his argument that the charges against him should be dismissed or, in the alternative, that he should be given a new trial.

There are two significant problems with Lass's argument that the sanction of dismissal (or that of forcing the State to retry him) is warranted. First, his trial counsel expressly told the trial court that he was

not seeking to have the case dismissed because of the monitored jail conversations between Lass and his fellow inmate:

> I'm here to tell the Court that I as of right now cannot say that there's an egregious violation for you to dismiss the case. [The prosecutor] at this point has said that she's not going to introduce [the statements Lass made to the inmate]. So unless I talk to [the inmate] and things change, the issue's moot right now.

Lass never asked the trial court to dismiss the case on the right-to-counsel issue. The point has thus been waived. *See State v. Esser*, 166 Wis. 2d 897, 907, 480 N.W.2d 541, 545 (Ct. App. 1992). Moreover, there is absolutely no evidence in the record to support the contention in Lass's appellate brief that the State has "trample[d]" on defendants' constitutional rights by violating their right to counsel "with impunity."

3. *Exculpatory material.*

Lass argues that the State violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which held that "the suppression by the prosecution of evidence favorable to an accused upon request [*sic*] violates due process where the evidence is material either to guilt or to punishment," by not giving him recordings of his conversation with the jail inmate, during the course of which Lass allegedly denied possessing the drugs that were found in Piotrowski's apartment. " '[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *United States v. Bagley*, 473 U.S. 667, 685 (1985)

(White, J., concurring, but writing for the majority on this point, quoting from Justice Blackmun's opinion, 473 U.S. at 682). There was no *Brady* violation.

First, Lass's trial counsel told the trial court that the tape was worthless: "They also gave me a tape and which I listened to, which was clearly inaudible. I can't hear anything on the tape, just because of the noise in the jail and whatever have you." As the State points out in its brief, a tape cannot be exculpatory if it is "inaudible."[5] Second, anything of an exculpatory nature that Lass might have said to his fellow inmate at the jail would have been hearsay, *see* RULE 908.01(3), STATS., and not admissible if offered into evidence by him, *see* RULE 908.02, STATS. It thus was not "evidence" that would have tended to make "the result of the proceeding . . . different." *See Bagley*, 473 U.S. at 685.

### 4. *Timely pretrial disclosure.*

Lass claims that the State violated his rights by turning over to him on the Friday before the Monday that the trial was scheduled to start some three-hundred pages of documents that allegedly concerned his "wealth." His brief on appeal claims, without citation to the record: that this "wealth" evidence was crucial to the case; that the trial court denied his motion to exclude the evidence; and that the trial court denied him a continuance to review the material.

RULE 809.19(1)(d) & (e), STATS., require citations to the record both in the "statement of the facts relevant to the issues presented" and in support of the argument. We will not consider arguments that are not supported by appropriate references to the record. *See*

---

[5] The tape itself is not part of the record on appeal.

*State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343, 346 n.2 (Ct. App. 1994), *cert. denied*, 115 S. Ct. 1389. Further, the State represents in its brief that the record does not support Lass's contentions that the three-hundred pages were used at trial, or that the trial court denied Lass a reasonable opportunity to review the material. Significantly, Lass's reply brief has not controverted any of these representations. *See Charolais Breeding Ranches, Ltd. v. FPC Securities Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979) (arguments not disputed deemed admitted). Indeed, the record reveals that the trial court told the parties that it would "at least consider an adjournment" if Lass's trial counsel needed one to review the documents, and that the State indicated that if Lass's trial counsel needed an adjournment, the State "certainly could not object to that." Lass's representation in his appellate brief-in-chief that he was denied a continuance to review the material is thus controverted by the record. We admonish Lass's appellate counsel, Martin E. Kohler, Esq., and Michael F. Hart, Esq., that misleading statements in briefs filed in court contravene SCR 20:3.3, which requires candor toward tribunals before whom lawyers appear.

*By the Court.*—Judgment and order affirmed.