STATE of Wisconsin, Plaintiff-Respondent,†

v.

Carlos SANTIAGO, Defendant-Appellant.††

Court of Appeals

*No. 94–1200–CR. Submitted on briefs January 3, 1995.—Decided November 7, 1995.*

(Also reported in 542 N.W.2d 466.)

†Petition to review granted.
††Petition for cross review granted.

For the defendant-appellant the cause was submitted on the briefs of *Eduardo M. Borda* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Sullivan, Fine, and Schudson, JJ.

SULLIVAN, J. Carlos Santiago appeals from a judgment, upon a guilty plea, convicting him of possession of a controlled substance with intent to deliver—tetrahydrocannabinol (marijuana), contrary to §§ 161.14(4)(t) and 161.41(lm)(h), STATS. (1991-92). At issue in this case is whether the trial court erred in concluding that the State met its burden in showing that Santiago knowingly and intelligently waived his *Miranda* rights.[2] We conclude that the trial court's conclusion that Santiago knowingly and intelligently waived his rights is unsupported by the current evidentiary record in this case. Further, because the trial court prevented Santiago from preserving, through either spoken or written testimony, the exact Spanish wording of the *Miranda* warnings given to him by the police, the appellate record is insufficient for this court to review whether the State met its burden in showing that Santiago knowingly and intelligently waived his *Miranda* rights. Accordingly, we must reverse the judgment of conviction and remand the matter to the trial court for further evidentiary hearings on this issue.

## I. BACKGROUND

In January 1993, police obtained a warrant to search Santiago's residence on West Greenfield Avenue in the City of Milwaukee. While executing the search warrant, the police forced their way into the home and found fifteen "baggies" containing marijuana in Santiago's bedroom. Police arrested Santiago, but it became apparent to the officers that Santiago did not

---

[2] *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

speak English. The officers requested that a Spanish-speaking officer be sent to the residence to act as an interpreter. Officer John Garcia arrived twenty minutes after the arrest and provided Santiago with the *Miranda* warnings at issue in this appeal. Santiago later made a custodial statement to police admitting that the marijuana found in the bedroom belonged to him. Consequently, the State charged Santiago for the drug offense.

Santiago filed a motion to suppress his statements to police because of alleged *Miranda* deficiencies. He argued that he did not knowingly and intelligently waive his rights. Officer Garcia testified at the suppression hearing that he had no formal training in Spanish, and that he could neither read nor write Spanish. He did testify, however, that he spoke Spanish for most of his life, and that he considered himself a fluent Spanish speaker. Further, he testified that he had been used as a Spanish "interpreter" in more than one hundred investigations over his seventeen-year career as a Milwaukee police officer.

Officer Garcia testified that he first read the warnings to Santiago in English, then he looked at a card providing the *Miranda* warnings in English and simultaneously attempted to translate the English words into Spanish. After he read each of the rights, he asked Santiago if he understood what he had just said. Santiago responded, "Yes," in English, to each query. Garcia also told Santiago in Spanish that "[I]f he were cooperative, that would be the best thing for him."

Santiago's counsel then requested Officer Garcia to recite the Spanish words he used to inform Santiago of his *Miranda* rights. Counsel suggested that the court-appointed interpreter translate the Spanish

86

words into English for the court reporter.[3] The trial court refused to allow Officer Garcia to testify in Spanish and have his testimony translated by the interpreter. The court feared that the original Spanish words used by Officer Garcia would become lost, and that the interpreter's translation would become the "official version of what he said." Further, because Officer Garcia could not write in Spanish, a written version of his testimony could not be recorded. On facing this dilemma, the trial court and Santiago's counsel sought an appropriate avenue to preserve for the record the warnings Officer Garcia provided Santiago.

After further questions, Officer Garcia testified that in 1978 he worked with the Spanish Center in Milwaukee to produce a Spanish version of the *Miranda* warnings. He testified that although he could not read Spanish, he would give the Spanish language cards to defendants to allow them to better understand his verbal Spanish-language *Miranda* warnings. He did not have the card with the Spanish version when he gave the warnings to Santiago. Officer Garcia testified that the Spanish warnings on the card would have been substantially similar to those he generally gave in January of 1993, *but were not the actual Spanish words he spoke to Santiago*. He testified that the actual spoken version was more "street language" than the language of the card. He also confirmed that the Spanish-language card was "in no way close to being

---

[3] The court-appointed interpreter was sworn in at the beginning of the hearing. *See* generally § 885.37, STATS. (discussing court appointment of interpreters); *see also State v. Neave*, 117 Wis. 2d 359, 344 N.W.2d 181 (1984) (discussing obligation to provide criminal defendant with interpreter), *holding limited by, State v. Le*, 184 Wis. 2d 860, 517 N.W.2d 144 (1994).

verbatim of what [he] said to Mr. Santiago on January 27th." Based on this testimony, defense counsel contended that the Spanish card should not be substituted for the actual warnings spoken by Officer Garcia. Defense counsel then suggested that Officer Garcia testify in Spanish and then have the interpreter write the testimony in Spanish. The trial court originally granted counsel's motion, but before Officer Garcia could testify, the trial court reversed itself and denied this motion, stating that the written card would accomplish the same thing. The State objected to the relevance of the card because Officer Garcia testified that he did not use it with Santiago.

Santiago offered the card into evidence and the trial court received it, but neither the card nor Officer Garcia's spoken version is part of the appellate record; we only have minute portions of the alleged Spanish warnings provided in the testimony of Officer Garcia. He testified that he told Santiago "*apuntar un abogado*" to express the phrase "appoint you a lawyer." Further, he testified that he never said anything in Spanish which was the equivalent to "You can have a lawyer without any cost to you." Another Spanish-speaking officer testified later that *abogado* means "lawyer," and that *apuntar* means "to point." Further, the officer testified that the correct Spanish word for the English phrase "to appoint" is "*otorgar*." Finally, Santiago testified at the hearing and stated that he did not remember Officer Garcia reading him any constitutional rights.

Before making its ruling, the trial court provided lengthy factual findings. The trial court found that "with some exceptions, Officer Garcia talked to the defendant in substantially the words and terms that [we]re set forth in" the Spanish *Miranda* card. Further,

88

the court found that "he made every effort to use [S]panish words that he believed would best communicate these rights to the defendant." Accordingly, the trial court found that Santiago knowingly, intelligently, and voluntarily waived his *Miranda* rights when he gave the incriminating statements to police. The trial court concluded that the State had met its burden by "the greater weight of the credible evidence."

## II. APPLICATION

██ Santiago argues that the State failed to make a *prima facie* showing that he knowingly, intelligently, and voluntarily waived his *Miranda* rights. Accordingly, he argues that his custodial statements should have been suppressed because their admission would violate his constitutional rights under the federal and state due process clauses. Resolving this issue requires us to apply the trial court's factual findings to federal and state constitutional principles. *State v. Lee,* 175 Wis. 2d 348, 354, 499 N.W.2d 250, 252 (Ct. App. 1993). While we review the trial court's factual findings under the "clearly erroneous" standard, *see State v. Esser,* 166 Wis. 2d 897, 903, 480 N.W.2d 541, 543 (Ct. App. 1992), the application of those facts to the constitutional principles presents a question of law that we review *de novo. Lee,* 175 Wis. 2d at 354, 499 N.W.2d at 252.

██ When the state seeks to admit a defendant's custodial statement, constitutional due process requires that it make two discrete showings: "First, . . . that the defendant was informed of his *Miranda* rights, understood them[,] and [knowingly and] intelligently waived

them. Second, . . . that the defendant's statement was voluntary." *Id.* at 359, 499 N.W.2d at 255 (citation omitted). Once the state has established both the *prima facia* case of a defendant's waiver of his *Miranda* rights, and the voluntariness of the defendant's custodial statement, the trial court should admit the statement into evidence. *Id.* Further, if this *prima facia* burden is met, a defendant may provide "countervailing evidence that his [or her] waiver was not knowing and intelligent." *Id.* at 361, 499 N.W.2d at 255-56. The trial court must then determine by the "totality of the circumstances" whether the defendant's waiver was knowingly and intelligently made. *Id.* at 361, 499 N.W.2d at 256. Under this "objective" standard, the validity of the *Miranda* waiver must be determined by the trial "court's inspection of the particular circumstances involved, including the education, experience and conduct of the accused as well as the credibility of the police officer's testimony." *Id.* at 364, 499 N.W.2d at 257.

Santiago first argues that the trial court applied the incorrect burden of proof for the State's *prima facia* showing that he waived his *Miranda* rights by "the greater weight of the credible evidence." He argues that the trial court should have applied the "beyond a reasonable doubt" standard annunciated in *State v. Mitchell,* 167 Wis. 2d 672, 696, 482 N.W.2d 364, 374 (1992). This issue was recently resolved by the Wisconsin Supreme Court.

In *State v. Jones,* 192 Wis. 2d 78, 114a, 532 N.W.2d 79, 94 (1995), *amended upon denial of motion for reconsideration by*, No. 92-1316-CR (per curiam order) (Wis. June 29, 1995), the supreme court held that the state must show only " 'by a preponderance of the evidence' "

that a defendant's waiver of his or her *Miranda* rights was knowing and intelligent. *Id.* (quoting *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S. Ct. 515, 522, 93 L.Ed.2d 473, 485 (1986)); *see also State v. Beaver,* 181 Wis. 2d 959, 966-67, 512 N.W.2d 254, 256 (Ct. App. 1994); *Lee,* 175 Wis. 2d at 362-64, 499 N.W.2d at 256; *Esser,* 166 Wis. 2d at 904-06, 480 N.W.2d at 544-45. Accordingly, the trial court applied the correct burden of proof in this case. *See Esser,* 166 Wis. 2d at 905-06, 480 N.W.2d at 545 (discussing equivalence of "preponderance of the evidence" and "greater weight of the credible evidence" standards).

Santiago also intimates in his appellate brief that the Wisconsin Constitution may require a "higher" burden of proof for the State. While we acknowledge that based upon state law we may adopt a more stringent standard than that required by the federal Constitution, *see id.,* at 905, 480 N.W.2d at 544 (citing *Lego v. Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 627, 30 L.Ed.2d 618, 627 (1972)), "[w]hether such a burden *should* be adopted is properly left to our supreme court," *id.* (emphasis added), and accordingly, we as an intermediate appellate court will not address that question here.

Santiago next argues that the record fails to support the trial court's conclusion that he knowingly and intelligently waived his *Miranda* rights. He challenges whether Officer Garcia's recitation of the *Miranda* warnings in Spanish provided an adequate basis from which he could knowingly and intelligently waive his rights. The trial court found that the *Miranda* warnings given to Santiago in Spanish were substantially the same as those on the Spanish language card and that, based upon the card and Officer Garcia's testimony, Santiago knowingly and intelligently waived his

rights. We conclude that this factual finding is "clearly erroneous" and not supported by Officer Garcia's testimony. *Id.* at 903, 480 N.W.2d at 543.

First, we note that while the English language is the dominant form of official and interpersonal communication used in the United States, a non-English speaking defendant is still protected by the same constitutional rights accorded to English speakers. *See Yniguez v. Arizonans for Official English*, 69 F.3d 920, 923 (9th Cir. 1995) (en banc) (citation omitted). However, "language difficulties may impair the ability of a person in custody to waive these rights in a free and aware manner."[4] *United States v. Heredia-Fernandez,* 756 F.2d 1412, 1415 (9th Cir.), *cert. denied,* 474 U.S. 836, 106 S. Ct. 110, 88 L.Ed.2d 90 (1985). Thus, in some cases, a trial court must consider a defendant's language skills when determining if under the "totality of the circumstances" the defendant knowingly and intelligently waived his or her rights. In such cases, a court

---

[4] Indeed, while we recognize that "[i]n our diverse and pluralistic society, the importance of establishing common bonds and a common language between citizens is clear," *Yniguez v. Arizonans for Official English*, 69 F.3d 920, 923 (9th Cir. 1995) (en banc), we also recognize that "[t]his diversity makes it increasingly difficult for the criminal justice system to meet constitutional requirements of fundamental fairness." WILLIAM E. HEWITT, NATIONAL CENTER FOR STATE COURTS, COURT INTERPRETATION: MODEL GUIDES FOR POLICE AND PRACTICE IN THE STATE COURTS 11 (1995).

For instance, we note that one recent study estimated that nationally in 1990 the number of home speakers of non-English languages was nearly 32 million or approximately 12.6% of the total population. *Id.* at 11. This same study found that the estimated number of home speakers of selected non-English languages in Wisconsin in 1990 equalled 5.3% of the state's population. *Id.* at 24.

may conclude that, because of a defendant's lack of English-language skills, the questioning officers should provide the *Miranda* warnings in the defendant's native language to ensure full understanding of those warnings. *See, e.g., United States v. Boon San Chong,* 829 F.2d 1572, 1573, 1574-75 (11th Cir. 1987) (Chinese-speaking defendant provided Chinese "advice of rights" form).

The investigating police officers in this case followed such a procedure. When it became apparent that Santiago did not understand English, they requested a Spanish-speaking officer to provide Santiago with his *Miranda* warnings. Hence, what is at issue in this case is whether Officer Garcia's Spanish *Miranda* warnings were sufficient so that Santiago could knowingly and intelligently waive his rights.

It is apparent from the record that Officer Garcia did not read Santiago an officially prepared Spanish language version of the *Miranda* warnings.[5] He read the warnings from an English language card, first in English, and then attempted to translate the English version into Spanish. Santiago contends that this translation failed to provide the *Miranda* warnings accurately and completely.

We note that the police need not provide a "talismanic incantation" of the exact language of the warnings as provided by the United States Supreme Court in *Miranda. California v. Prysock,* 453 U.S. 355, 355, 359-60, 101 S. Ct. 2806, 2807, 2809, 69 L.Ed.2d 696, 699, 701 (1981). The essential question is whether the police convey the equivalent essence of the

---

[5] We do note that providing police with an officially prepared card written in languages that police are likely to routinely encounter would prevent some of the difficulties evident in this case.

*Miranda* warnings. *Id.* at 360, 101 S. Ct. at 2809, 69 L.Ed.2d at 701. The substance, not the form of the warnings is the focus of our inquiry. *Bohachef v. State,* 50 Wis. 2d 694, 700, 185 N.W.2d 339, 342 (1971).

Unfortunately, we are at an impasse in this case because we do not have the warnings given by Officer Santiago from which we can determine whether their substance satisfies constitutional requirements. The trial court recognized the obvious problem of having Officer Garcia testify in Spanish the exact wording of the *Miranda* warnings he spoke to Santiago—the non-Spanish-speaking court reporter was unable to record this testimony. Likewise, because Officer Garcia could not write in Spanish, he could not provide the court with a written version of the *Miranda* warnings he gave to Santiago. Inexplicably, however, the trial court denied defense counsel's request to have Officer Garcia testify in Spanish, and then have the court-appointed interpreter write down this testimony in Spanish and translate it into English.

We do not know what Officer Garcia told Santiago in Spanish because the trial court prevented Santiago from making a record of the actual statement. Additionally, there were questions raised over whether some of the Spanish phrases used by Officer Santiago, e.g., *"apuntar un abogado,"* were adequate translations of the *Miranda* warnings.

Thus, at this point on appeal the focus of this case is more about the lack of a clear and accurate record of what transpired between Officer Garcia and Santiago than it is about a constitutional error on the part of the police. It is clear that the trial court attempted several times to provide an accurate record of what Garcia told Santiago; however, these attempts fell short and we are left without an accurate record. Without a record of

94

what Officer Garcia told Santiago, this court is bereft of sufficient evidence from which we can review whether the police complied with *Miranda* and its progeny.

More problematic is the fact that instead of having the interpreter transcribe Officer Garcia's testimony in Spanish and then translate it into English, the trial court found that a Spanish-language card created by Garcia was the substantial equivalent of the actual spoken words used by Officer Garcia. The court made this finding despite Officer Garcia's testimony that he did not have the card with him when he "*Mirandized*" Santiago and that the actual language he used was different from that on the card.

Based upon Officer Garcia's testimony, we conclude that the trial court's factual finding that "Officer Garcia talked to the defendant in substantially the words and terms that [we]re set forth in" the Spanish *Miranda* card is unsupported by the current appellate record. Accordingly, this factual finding is "clearly erroneous." *Esser,* 166 Wis. 2d at 903, 480 N.W.2d at 543. At issue is what Officer Garcia *actually* said, and because he testified that he did not use the same words as the Spanish language card, but rather a "street language" version, the Spanish language card could not provide the trial court with a substantial equivalent of Officer Garcia's actual *Miranda* statement to Santiago.[6] Without further evidence in the record of what Officer Garcia actually told Santiago, the trial court's conclusion that Santiago's waiver was knowingly and intelligently made is unsupported by "the totality of

---

[6] It is irrelevant that the Spanish language card is not part of the appellate record because Officer Garcia testified that he did not use the card and that the words he used were different from those on the card.

the circumstances." *Lee*, 175 Wis. 2d at 361, 499 N.W.2d at 256. Accordingly, we must reverse and vacate the judgment of conviction and remand the matter for a continued evidentiary hearing on this issue.

We order the trial court to hold further hearings and make specific factual findings on what Officer Garcia actually told Santiago and whether these Spanish *Miranda* warnings properly conveyed the substance of *Miranda*'s mandate. The trial court should permit Officer Garcia to state, in Spanish, what he believes he told Santiago. The court-appointed interpreter should then transcribe Officer Garcia's testimony in Spanish and then translate it into English so that the trial court has the best-available English-language record of the warnings Officer Garcia says he gave to Santiago. If, based upon these facts, the trial court finds that Santiago knowingly and intelligently waived his *Miranda* rights, the trial court shall reinstate the judgment of conviction. If the trial court does not reach this conclusion, Santiago shall be allowed to withdraw his guilty plea and the State may reinstitute its prosecution of the case if it so chooses.

*By the Court.*—Judgment reversed and cause remanded with directions.

FINE, J. (*dissenting*). The Majority concludes that the trial court's finding that "the *Miranda* warnings given to Santiago in Spanish were substantially the same as those on the Spanish language card and that, based upon the card and Officer Garcia's testimony, Santiago knowingly and intelligently waived his rights" is "clearly erroneous," Majority op. at 95, because the officer who gave to the defendant the warnings required by *Miranda v. Arizona*, 384 U.S. 436

(1966), did not have the Spanish *Miranda*-warning card with him at the time, Majority op. at 95. The Majority, however, ignores the officer's testimony that he fully advised the defendant of the rights protected by the *Miranda* decision, that the defendant understood those rights, and that the defendant waived those rights voluntarily. This testimony amply supports the trial court's findings. It is not our function to review that finding *de novo*. Moreover, the Majority's decision imposes a burden on the State that is contrary to established precedent:

> Reviewing courts . . . need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by Miranda."

*Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (citation omitted; brackets by *Duckworth*). Contrary to the Majority's view, the law does not require that the officer have used the exact words on the Spanish *Miranda*-warning card; all that is required is that the warning be given in substance. The trial court's finding that that was done here is supported by the officer's testimony.

I respectfully dissent.